IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| LISA TIFFT and MARILYN PECKHAM, individually and on behalf of all others similarly situated,<br><br>                          Plaintiffs,<br><br>v.<br><br>SAINT-GOBAIN PERFORMANCE PLASTICS CORP. and HONEYWELL INTERNATIONAL INC. f/k/a ALLIED-SIGNAL INC.,<br><br>                          Defendants. | Civil Action No. <u>1:16-CV-0292 (BKS/TWD)</u><br><br>Class Action Complaint<br>(Demand for Jury Trial) |

Plaintiffs Lisa Tifft and Marilyn Peckham, by their attorneys, Finkelstein, Blankinship, Frei-Pearson & Garber, LLP, as and for their class action complaint, allege, with personal knowledge as to their own actions, and upon information and belief as to those of others, as follows:

**<u>INTRODUCTION</u>**

1.      The Village of Hoosick Falls in upstate New York, once known as the "Home of New York State's Best Tasting Water," is today sadly known for having water tainted by a deadly chemical known as perfluorooctanoic acid or PFOA.

2.      For decades, the operators of a plastics plant on McCaffrey Street, which used PFOA to manufacture products resistant to heat, stain, and water, carelessly discharged PFOA into the environment, contaminating the groundwater and water supply of Hoosick Falls.  Saint-Gobain Performance Plastics Corp. ("Saint-Gobain") currently owns the plant, and AlliedSignal Inc., now known as Honeywell International Inc. ("Honeywell"), used to own it.

3.     As a result, residents of Hoosick Falls have a history of health issues consistent with PFOA exposure.  But it was only recently that village and state officials recognized the water contamination and its health risks, after being prodded by the U.S. Environmental Protection Agency.   Aside from the health risks posed by PFOA exposure, the water contamination has resulted in significant and widespread property devaluation in Hoosick Falls.

4.     The New York Department of Environmental Conservation has identified Saint-Gobain and Honeywell as parties responsible for contaminating the groundwater and water supply in Hoosick Falls with PFOA.

5.     This suit seeks to hold the two companies accountable for their water contamination and its resulting damages to Plaintiffs and other thousands of residents of Rensselaer County in New York who consumed water from the municipal water supply provided by the village of Hoosick Falls, as well as owners of real property located in Hoosick Falls. Plaintiffs seek, *inter alia*, actual damages, consequential damages, punitive damages, injunctive relief, attorneys' fees, and the costs of this suit.

## **PARTIES**

6.     Plaintiff Lisa Tifft is a citizen of New York State residing in Hoosick Falls.

7.     Plaintiff Marilyn Peckham is a citizen of New York State residing in Hoosick Falls.

8.     Defendant Saint-Gobain is a corporation organized under the laws of California, with its principal place of business in Pennsylvania.

9.     Defendant Honeywell, f/k/a AlliedSignal Inc., is a corporation organized under the laws of Delaware, with its principal place of business in New Jersey.

2

10.     Defendants, at different times, operated a manufacturing facility located at or around 14 McCaffrey Street, Hoosick Falls, New York (the "McCaffrey Street Plant").

## JURISDICTION

11.     Subject matter jurisdiction in this civil action is authorized pursuant to 28 U.S.C. § 1332(d), as minimal diversity exists, there are more than 100 class members, and the amount in controversy is in excess of $5 million.

12.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a), as Defendants owned and operated a manufacturing plant in this District and Plaintiffs reside in this District.

## FACTUAL BACKGROUND

*Perfluorooctanoic Acid*

13.     Perfluorooctanoic acid, otherwise known as PFOA or C8, is a man-made chemical used to manufacture fluoropolymers (e.g., Teflon), a coating used to enable products to withstand heat and repel grease, oil, and water.  As such, it is found in heat-resistant wirings, fire and chemical resistant tubing, firefighting foams, non-stick cookware, protective finishes on carpets, stain or water resistant fabrics, and plumbing seal tape, to name a few products.

14.     Some of the world's largest manufacturers of fluoropolymers include DuPont, 3M, Solvay Chemicals, BASF, and Dyneon.

15.     PFOA is a perfluoralkyl sulfonate that is produced synthetically mostly as ammonium salt.

16.     PFOA persists in the environment, and it migrates readily from soil to groundwater.  Its toxicity, mobility, and bioaccumulation pose potential adverse effects on the environment and human health.

17.     Toxicology studies show that PFOA is readily absorbed after oral exposure and accumulates primarily in the serum, kidney, and liver.

3

18.     PFOA likewise persists in the human body, with a half-life of two to nine years (assuming no additional exposure), resulting in continued exposure that could lead to adverse outcomes.

19.     PFOA manufacturers -- such as 3M and DuPont -- issued instructions specifying that PFOA is not to be flushed into surface water or sewers, but, instead, should be incinerated or sent to chemical-waste facilities.

20.     Although studies have found PFOA in blood samples of the general human population, serum concentration of PFOA is higher for workers and individuals living near fluorochemical production facilities than for the general population.

21.     The U.S. Environmental Protection Agency ("EPA") considers PFOA an emerging contaminant.

22.     In January 2009, the EPA issued a provisional health advisory ("PHA") for PFOA of 0.4 ug/L (micrograms per liter) -- equivalent to 0.4 ppb (part per billion) or 400 ppt (part per trillion) -- to evaluate the risk from short-term exposure (weeks to months) through drinking water.  The EPA recommends that people not drink or cook with water contaminated with more then 0.4 ppb of PFOA.

23.     Various states have imposed more stringent guidelines for what they consider to be safe levels of PFOA in their residents' drinking water (e.g., in Minnesota, 0.3 ug/L or 300 ppt in drinking water, and in New Jersey, 0.04 ug/L or 40 ppt in drinking water).

24.     Scientific studies on humans using generally accepted methodologies show that exposure to PFOA, even at low levels, is unsafe.  Indeed, studies performed on a large number of people living near a PFOA manufacturing plant in Ohio and West Virginia prove that exposure

to PFOA causes high cholesterol, ulcerative colitis, thyroid disease, kidney cancer, testicular cancer, and pregnancy-induced hypertension and pre-eclampsia.

25.     Studies on animals have also shown that exposure to PFOA can interfere with fatty acid metabolism, deregulate metabolism of lipids and lipoproteins, and lead to cancer of the liver, pancreas and testes.

26.     Recognizing that PFOA poses a health hazard, eight major PFOA manufacturers agreed to participate in the EPA's PFOA Stewardship Program in 2006, making voluntary commitments to reduce product content and facility emissions of PFOA and related chemicals by 95% no later than 2010 and working toward eliminating use of these substances by 2015.

***The McCaffrey Street Plant***

27.     Defendants have been manufacturing various products using PFOA since 1986, when AlliedSignal purchased the McCaffrey Street Plant and began manufacturing polymer-based products such as pressure sensitive adhesive tapes, Teflon-coated fabrics, and Teflon sheets, films, and laminates.  AlliedSignal is now doing business as Honeywell International Inc.

28.     In 1996, AlliedSignal (i.e., AlliedSignal Laminates System, Inc.) sold the McCaffrey Street Plant to Furon Company, a manufacturer of specialized polymer components such as tapes, films, coated fabrics, hose, tubing, and plastic-formed components.

29.     In 1999, Saint-Gobain purchased Furon Company and took over operations of the McCaffrey Street Plant, where it manufactured polymer-based products such as adhesive and bonding tapes, coated fabrics, extruded films, and foams.  Saint-Gobain currently owns the McCaffrey Street Plant.

30.     AlliedSignal, Furon Company, and Saint-Gobain all used PFOA at the McCaffrey Street Plant to manufacture these products.

31.     Upon information and belief, PFOA seeped into the village's underground wells and aquifers when workers at the McCaffrey Street Plant, over a period of decades, cleaned smokestack filters and other equipment on the side of the hill outside the plant and flushed manufacturing byproducts into a storm drain.

32.     In addition, the McCaffrey Street Plant periodically emitted a powder-like smoke plume that was heavier than air and settled in the valley around the plant.

33.     Upon information and belief, Defendants discharged PFOA into the environment in other ways.

34.     As a proximate result of the manner in which defendants disposed of PFOA and discharged it into the environment, PFOA contaminated the village's groundwater and water supply system.

***Extent & Discovery of PFOA Contamination***

35.     A disproportionate number of the residents of Hoosick Falls and the surrounding area have suffered from medical conditions now known to be caused by exposure to PFOA.

36.     Given the incidence of rare and aggressive forms of cancer and other diseases in the area, certain residents formed a group "Healthy Hoosick Water" to pressure the village and Saint-Gobain to test drinking water from the public water supply.

37.     Approximately 4,500 people consume water from the Hoosick Falls municipal water system.

38.     In or around April 2015, testing of the village municipal water supply revealed a PFOA concentration of 550 ng/L or ppt, well above the EPA advisory.

39.     In June 2015, the Hoosick Falls Water Department tested drinking water from the municipal water supply.  Four of the five samples tested showed PFOA concentrations of at least 612 ppt, well above the EPA advisory of 400 ppt.  Moreover, testing done by Saint-Gobain on

groundwater under the McCaffrey Street Plant found PFOA concentrations of up to 18,000 ppt. That groundwater includes an aquifer that is believed to feed the village's nearby underground well system.

40.     In a letter dated November 25, 2015, the EPA warned Hoosick Falls Mayor David Borge that, given the June 2015 test results, use of water for drinking and cooking should be discontinued.

41.     Recognizing its liability, Saint-Gobain began to provide Hoosick Falls residents with free bottled water.

42.     The EPA issued a statement in December 2015 warning residents in Hoosick Falls not to drink or cook with village water.  Despite earlier waffling, the mayor and the New York Department of Health ("DOH") also recommended that residents only drink bottled water.

43.     On January 14, 2016, the New York Department of Environmental Conservation ("DEC") and DOH requested the EPA to add Saint-Gobain and other possible sources of contamination in Hoosick Falls to the National Priorities List under the federal Superfund program and to investigate the sources of contamination.

44.     In a public meeting held on the same day, EPA officials admitted that designating Hoosick Falls as a Superfund site would hurt property values in the village.

45.     The water contamination in Hoosick Falls has made properties in the area less marketable and resulted in significant property devaluation, prompting the New York Department of Financial Services to meet with concerned property owners.

46.     The water contamination in Hoosick Falls has also caused several banks to cut back on mortgage and refinancing activities in and around Hoosick Falls for fear of further property devaluation.

47.     On January 27, 2016, Governor Andrew Cuomo announced that the Saint-Gobain plant would be designated a state Superfund site, and as such, the State would conduct a health-risk analysis, re-test private wells in the village and install filters at schools and other gathering places. The governor also issued an emergency regulation classifying PFOA as a hazardous substance.

48.     On January 28, 2016, the EPA advised residents whose private wells show PFOA exceeding 100 ppt not to use water for drinking or cooking.

49.     On February 1, 2016, U.S. Senator Charles Schumer blamed Saint-Gobain for the water contamination and demanded that the company "come clean as to what happened, where they put the stuff, and then work on a plan to quickly clean it up."

50.     The DEC served a letter dated February 11, 2016 on Saint-Gobain and Honeywell International, identifying the two companies or their predecessors, as the owner, past owner, operator, or past operator of industrial facilities at or near properties known or suspected to have used PFOA.  In particular, the DEC letter highlighted the McCaffrey Street Plant, where testing had already revealed extremely high levels of PFOA contamination in the groundwater.

51.     The DEC demanded that the two companies enter into a Consent Order to "investigate the extent of the contamination, provide for interim remedial measures to protect public health and drinking water supplies, analyze the alternatives for providing clean and safe drinking water, and ultimately design and implement a comprehensive clean and remediation of contamination at or near the Properties."  The DEC also demanded "reimbursement of funds expended . . . in taking response actions at sites where hazardous substances have been released."

***Damages Suffered by Plaintiffs***

52.     Plaintiff Lisa Tifft has been a resident of Hoosick Falls for 34 years.  She currently lives less than half a mile away from the McCaffrey Street Plant.  Her residence

receives water from the village's water supply, and, for years, she has used and consumed the water provided by the village's water supply.  Ms. Tifft did not become aware of the PFOA contamination until around December 2015.  As a proximate result of her exposure to PFOA, Ms. Tifft suffers from various health issues, including thyroid disease (requiring regular medication), high cholesterol, irritable bowel syndrome, diverticulosis, and anxiety and depression.  In addition, a fibroid mass developed on her breast that required removal.  She also is unable to fully use and fully enjoy water supplied to her home.

53.     Plaintiff Marilyn Peckham has been a resident of Hoosick Falls for 33 years.  In 1983, she purchased a house about half a mile from the McCaffrey Street Plant in Hoosick Falls and moved there with her three children.  Since then, Ms. Peckham has lived continuously at her home, which receives water from the village's water supply, and, for years, she has used and consumed the water provided by the village's water supply.  Ms. Peckham did not become aware of the PFOA contamination until around December 2015.  As a proximate result of her exposure to PFOA, Ms. Peckham suffers from high cholesterol and requires regular medication for a thyroid condition.  Moreover, as a result of the PFOA contamination in Hoosick Falls, her property has significantly declined in value.  She incurs and continues to incur expenses for water she is unable to fully use and enjoy.

54.     Plaintiff Marilyn Peckham also owns a rental property in Hoosick Falls, just around the corner from her house and also less than half a mile from the McCaffrey Street Plant. The rental property also receives water from the village's water supply.  As a result of the PFOA contamination in Hoosick Falls, this property has significantly declined in value.  In April 2015, Ms. Peckham placed the property on the market for $19,000.00.  A buyer agreed to purchase the property for $6,000.00, with a closing date scheduled for December 2015.  However, the buyer

failed to close on the property by the agreed upon date and, in January 2016, walked away from the purchase altogether.  Ms. Peckham has placed the property back on the market, but has been unable to find a willing buyer.

## CLASS ACTION ALLEGATIONS

55.     Plaintiffs bring this action on their own behalf and, pursuant to Rule 23 of the Federal Rules of Civil Procedure, on behalf of all residents of Rensselaer County in New York who consumed water from the municipal water supply provided by Hoosick Falls (the "Exposure Class").  Plaintiff Marilyn Peckham also brings this action on her own behalf and on behalf of all persons who own or owned real property in Hoosick Falls (the "Property Damage Class").

56.     Plaintiffs are members of the Classes they respectively seek to represent.

57.     Excluded from the Classes are Defendants; any parent, subsidiary, or affiliate of Defendants; any entity in which Defendants have or had a controlling interest, or which Defendants otherwise control or controlled; and any officer, director, employee, legal representative, predecessor, successor, or assignee of Defendants.

58.     This action is brought as a class action under Rule 23(b)(3) for the following reasons:

      a.     Each Class consists of thousands of persons and is therefore so numerous that joinder of all members, whether otherwise required or permitted, is impracticable;

      b.     There are questions of law or fact common to each Class that predominate over any questions affecting only individual members, including but not limited to the following:

            i.     Whether Defendants knew or should have known that exposure to PFOA could increase health risks;

            ii.     When Defendants knew or should have known that exposure to PFOA could increase health risks;

iii.      Whether Defendants knew or should have known that disposing of PFOA in the manner alleged herein was reasonably likely to result in drinking water contamination;

iv.      Whether the manner in which Defendants disposed of PFOA proximately caused drinking water contamination;

v.      For the Exposure Class, whether any health issues of Plaintiffs and other Class members are attributable to PFOA exposure;

vi.      For the Property Damage Class, whether Defendants knew or should have known that water contamination was reasonably likely to cause property devaluation;

vii.      For the Property Damage Class, whether property values in Hoosick Falls declined in value following the water contamination;

viii.      For the Property Damage Class, whether property devaluation in Hoosick Falls was proximately caused by the water contamination;

ix.      Whether prior owners of the McCaffrey Street Plant could be held liable for improper disposal of PFOA, and if so, to what extent; and

x.      For the Exposure Class, whether Plaintiffs and other Class members are entitled to medical monitoring.

c.      The claims asserted by Plaintiffs are typical of the claims of the members of the Classes they respectively seek to represent;

d.      Plaintiffs will fairly and adequately protect the interests of their respective Classes, and Plaintiffs have retained attorneys experienced in class and complex litigation;

e.      Prosecuting separate actions by individual class members would create a risk of inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for Defendants;

f.      A class action is superior to other available methods for the fair and efficient adjudication of the controversy, for at least the following reasons:

i.      Absent a class action, members of the Classes, as a practical matter, will be unable to obtain redress;

11

ii.     It would be a substantial hardship for most individual members of the Classes if they were forced to prosecute individual actions;

iii.    When the liability of Defendants has been adjudicated, the Court will be able to determine the claims of all members of the Classes;

iv.    A class action will permit an orderly and expeditious administration of the Classes' claims; foster economies of time, effort, and expense; and ensure uniformity of decisions;

v.     The lawsuit presents no difficulties that would impede its management by the Court as a class action; and

vi.    Defendants have acted on grounds generally applicable to Class members of the Classes, making class-wide monetary relief appropriate.

59.    Plaintiffs also seek certification under Rule 23(b)(2).  Defendants have acted or refused to act on grounds that apply generally to each Class.  Defendants should be required to undertake remediation efforts, including (i) cleaning up the contamination from the village's water supply, (ii) installing an effective water filtration system, (iii) adopting policies and practices to properly dispose of chemicals, including PFOA, to arrest further damage to the environment and human health, (iv) regularly monitoring and reporting the level of chemical contamination in the groundwater around and under their industrial facilities and in the public wells and the village's water supply, (v) severely regulating or ceasing PFOA use in their manufacturing processes, and (vi) developing and implementing a protocol to monitor the health of Plaintiffs and other Class members and diagnose diseases that have been linked to PFOA exposure.  As such, Plaintiffs and other Class members are entitled to injunctive relief in the form of remediation efforts and medical monitoring as above described.

60.    Alternatively to certification under Rule 23(b)(2) or 23(b)(3), Plaintiffs and the members of the Classes request certification under Rule 23(c)(4) on the issue of Defendants'

liability to the Plaintiffs and the members of the Classes, individually and collectively, under the various causes of action alleged in this complaint.

## CAUSES OF ACTION

## FIRST CAUSE OF ACTION
### (NEGLIGENCE)

61.     Plaintiffs repeat and re-allege the allegations contained in Paragraphs 1-60 as if fully set forth herein.

62.     At all relevant times, Defendants had a duty to operate the McCaffrey Street Plant, as well as any other industrial sites they operated in the Hoosick Falls area, in a reasonable, safe, and prudent manner.

63.     At all relevant times, Defendants had a duty to ensure that dangerous substances at the McCaffrey Street Plant were disposed of reasonably and properly so as not to discharge hazardous or toxic substances, such as PFOA, into the environment and to prevent water contamination, personal injury, and property damage.

64.     At all relevant times, Defendants knew or should have known that exposure to PFOA was hazardous to the environment and to human health.

65.     At all relevant times, Defendants knew or should have known that they were handling and/or disposing of PFOA at the McCaffrey Street Plant in such a manner that they discharged PFOA and other chemicals into the environment at dangerous levels.

66.     Upon information and belief, Defendants breached their duty by disposing of PFOA in the manner alleged herein and by failing to warn Plaintiffs and other Class members of the dangers resulting therefrom.

67.     As a direct result of Defendants' breach of their duty, PFOA contaminated the groundwater and water supply of Hoosick Falls.

68.     As a direct and proximate result of the contamination of the Hoosick Falls water supply by Defendants' breach of their duty, (i) properties owned by Plaintiff Marilyn Peckham and other members of the Property Damage Class have declined in value; (ii) Plaintiffs and the other members of the Class lost the beneficial use, enjoyment, and exclusive possession of their properties; (iii) Plaintiffs and the other member of the Exposure Class suffered inconvenience, annoyance, aggravation, and/or disruption of daily activities resulting in a loss of the quality of their lives; (iv) Plaintiffs and other members of the Exposure Class suffered bodily injury; and (v) Plaintiffs and other members of the Exposure Class have suffered, and continue to suffer from, exposure to levels of PFOA that permanently increased their risk of suffering serious bodily injury, including developing life-threatening forms of cancer.

69.     By reason of the foregoing, Defendants are liable to Plaintiffs and the Class for damages that Plaintiffs and the Class have suffered as a result of Defendants' actions, the amount of which will be determined at trial, plus reasonably attorneys' fees and costs, as well as other relief, including developing and implementing a protocol to monitor the health of Plaintiffs and other Class members and diagnose diseases that have been linked to PFOA exposure.

## SECOND CAUSE OF ACTION
### (STRICT LIABILITY FOR ABNORMALLY DANGEROUS ACTIVITY)

70.     Plaintiffs repeat and re-allege the allegations contained in Paragraphs 1-69 above as if fully set forth herein.

71.     Defendants' acts and omissions, which resulted in the discharge of PFOA into the environment and the contamination of the village's groundwater and water supply, constituted abnormally dangerous and/or ultra-hazardous activities.

72.     As a direct and proximate result of Defendants' abnormally dangerous and/or ultra-hazardous activities, (i) properties owned by Plaintiff Marilyn Peckham and the other

members of the Property Damage Class have declined in value; (ii) Plaintiffs and the other members of the Classes lost the beneficial use, enjoyment, and exclusive possession of their properties; (iii) Plaintiffs and the other member of the Exposure Class suffered inconvenience, annoyance, aggravation, and/or disruption of daily activities resulting in a loss of the quality of their lives; (iv) Plaintiffs and other members of the Exposure Class suffered bodily injury; and (v) Plaintiffs and other members of the Exposure Class have suffered, and continue to suffer from, exposure to levels of PFOA that have permanently increased their risk of suffering serious bodily injury, including developing life-threatening forms of cancer.

73.     By reason of the foregoing, Defendants are strictly liable to Plaintiffs and the Class for damages that they have suffered as a result of Defendants' abnormally dangerous or ultra-hazardous activities, the amount of which will be determined at trial, plus reasonable attorneys' fees and costs, as well as other relief, including developing and implementing a protocol to monitor the health of Plaintiffs and other Class members and diagnose diseases that have been linked to PFOA exposure.

### THIRD CAUSE OF ACTION
### (PRIVATE NUISANCE)

74.     Plaintiffs repeat and re-allege the allegations contained in Paragraphs 1-73 above as if fully set forth herein.

75.     Defendants' intentional and unreasonable, abnormally dangerous, and/or negligent acts and omissions, as alleged above, resulted in the discharge of PFOA into the environment.

76.     The discharge of PFOA into the environment resulted in the contamination of the village's groundwater and water supply with hazardous levels of PFOA.

15

77.     The contamination of the groundwater and water supply has prevented and continues to prevent Plaintiffs and the members of the Classes from consuming or using the water at their property or residence and constitutes a substantial interference with the right of Plaintiffs and the members of the Classes to use and enjoy, in the case of the Property Damage Class, their property or, in the case of the Exposure Class, their residence.

78.     By reason of the foregoing, Defendants are liable to Plaintiffs and the Class for the damages that they have suffered as a result of Defendants' actions, the amount of which will be determined at trial, plus reasonable attorneys' fees and costs.

## FOURTH CAUSE OF ACTION
## (TRESPASS)

79.     Plaintiffs repeat and re-allege the allegations contained in Paragraphs 1-78 above as if fully set forth herein.

80.     Defendants negligently, recklessly, intentionally, unreasonably, or through their participation in abnormally dangerous activities, discharged unsafe levels of PFOA from the McCaffrey Street Plant into the environment, thereby contaminating the village's groundwater and water supply.

81.     Defendants, by their acts and omissions, proximately caused a hazardous contaminant to enter, invade, intrude upon, and/or injure the right of Plaintiff Marilyn Peckham and the other members of the Property Damage Class to use or possess their property.

82.     Plaintiff Marilyn Peckham and the other members of the Property Damage Class have not consented to and do not consent to the invasion alleged above.

83.     Defendants' knew or reasonably should have known that Plaintiff Marilyn Peckham and the other members of the Property Damage Class would not consent to the invasion alleged above.

16

84.     As a direct and proximate result of the contamination of the Hoosick Falls water supply by Defendants' breach of their duty, (i) properties owned by Plaintiff Marilyn Peckham and the other members of the Property Damage Class have declined in value; and (ii) Plaintiff Marilyn Peckham and the other members of the Property Damage Class lost the beneficial use, enjoyment, and exclusive possession of their properties.

85.     By reason of the foregoing, Defendants are liable to Plaintiff Marilyn Peckham and the other members of the Property Damage Class for the damages that they have suffered as a result of Defendants' actions, the amount of which will be determined at trial, plus reasonable attorneys' fees and costs.

## FIFTH CAUSE OF ACTION
## (BATTERY)

86.     Plaintiffs repeat and re-allege the allegations contained in Paragraphs 1-85 above as if fully set forth herein.

87.     Defendants, by discharging PFOA into the environment and/or concealing their knowledge of the same, intentionally and willfully caused a direct, harmful, and/or offensive contact with Plaintiffs and the other members of the Exposure Class, and thereby committed a battery upon Plaintiffs and the members of the Exposure Class.

88.     As a direct and proximate result of Defendants' battery, (i) Plaintiffs and the other member of the Exposure Class suffered inconvenience, annoyance, aggravation, and/or disruption of daily activities resulting in a loss of the quality of their lives; (ii) Plaintiffs and other members of the Exposure Class suffered bodily injury; and (iii) Plaintiffs and other members of the Exposure Class have suffered, and continue to suffer from, exposure to levels of PFOA that permanently increased their risk of suffering serious bodily injury, including developing life-threatening forms of cancer.

89.     By reason of the foregoing, Defendants are liable to Plaintiffs and the Exposure Class for the damages that they have suffered as a result of Defendants' acts and omissions, the amount of which will be determined at trial, plus reasonable attorneys' fees and costs, as well as other relief, including developing and implementing a protocol to monitor the health of Plaintiffs and other Class members and diagnose diseases that have been linked to PFOA exposure.

WHEREFORE, Plaintiffs respectfully request that the Court enter judgment against Defendants as follows:

a.      Certifying this action as a class action, with the Classes as defined above, and appointing Plaintiffs' counsel as Class Counsel;

b.      On Plaintiffs' First Cause of Action, for Negligence, awarding against Defendants and in favor of Plaintiffs and the Classes compensatory, exemplary, and consequential damages that Plaintiffs and the Classes have suffered, plus punitive damages;

c.      On Plaintiffs' Second Cause of Action, for Strict Liability, awarding against Defendants and in favor of Plaintiffs and the Classes compensatory, exemplary, and consequential damages that Plaintiffs and the Classes have suffered, plus punitive damages;

d.      On Plaintiffs' Third Cause of Action, for Private Nuisance, awarding against Defendants and in favor of Plaintiffs and the Classes compensatory, exemplary, and consequential damages that Plaintiffs and the Classes have suffered, plus punitive damages;

e.      On Plaintiffs' Fourth Cause of Action, for Trespass, awarding against Defendants and in favor of Plaintiff Marilyn Peckham and the Property Damage Class

compensatory, exemplary, and consequential damages that they have suffered, plus punitive damages;

f.    On Plaintiffs' Fifth Cause of Action, for Battery, awarding against Defendants and in favor of Plaintiffs and the Exposure Class for the compensatory, exemplary, and consequential damages that Plaintiffs and the Exposure Class have suffered, plus punitive damages;

g.    Awarding Plaintiffs and the members of the Classes injunctive relief in the form of remediation efforts, including (i) cleaning up the contamination from the village's water supply, (ii) installing an effective water filtration system, (iii) adopting policies and practices to properly dispose of chemicals, including PFOA, to arrest further damage to the environment and human health, (iv) regularly monitoring and reporting the level of chemical contamination in the groundwater around and under their industrial facilities and in the public wells and the village's water supply, (v) severely regulating or ceasing PFOA use in their manufacturing processes;

h.    Awarding Plaintiffs and the members of the Exposure Class, for the 1st, 2nd, and 5th causes of action, injunctive relief in the form of medical monitoring, such as developing and implementing a protocol to monitor the health of Plaintiffs and other Class members and diagnose diseases that have been linked to PFOA exposure;

i.    Awarding Plaintiffs and the Classes interest and reasonable attorneys' fees and costs; and

j.      Awarding Plaintiffs and the Classes such other and further relief as this Court

deems just and proper.

## **DEMAND FOR TRIAL BY JURY**

Pursuant to Federal Rule of Civil Procedure Rule 38, Plaintiffs hereby demand a trial by

jury.

Dated: March 10, 2016
       White Plains, New York

**FINKELSTEIN, BLANKINSHIP,
FREI-PEARSON & GARBER, LLP**

By: ___ s/ Jeremiah Frei-Pearson ___
Jeremiah Frei-Pearson (519820)
D. Greg Blankinship (519819)
1311 Mamaroneck Avenue
White Plains, New York 10605
Tel: (914) 298-3281
Fax: (914) 824-1561
gblankinship@fbfglaw.com
jfrei-pearson@fbfglaw.com

*Attorneys for Plaintiffs and the Putative Classes*